IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEITH HOBBS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff<br><br>v.<br><br>COMMONWEALTH SERVICING GROUP, LLC, a Massachusetts limited liability company, and DMB FINANCIAL, LLC, a Massachusetts limited liability Company,<br><br>    Defendants | No. 1:19-CV-10408-NMG |

## COMMONWEALTH SERVICING GROUP, LLC and DMB FINCIANCIAL, LLC's ANSWER TO PLAINTIFF'S COMPLAINT

Defendants, Commonwealth Servicing Group, LLC ("Commonwealth") and DMB Financial, LLC ("DMB") (collectively "Defendants"), by and through their undersigned counsel, hereby answers the Plaintiff's "Complaint" as follows:

1. Plaintiff Keith Hobbs is a natural person and resident of Columbus, Muscogee County, Georgia.

**ANSWER:** Defendants admit that Mr. Hobbs is a natural person. The Defendants lack sufficient knowledge to admit or deny the remaining allegations.

2. Defendant Commonwealth Servicing Group, LLC is a limited liability company organized and existing under the laws of the State of Massachusetts with its headquarters located at 500 Cummings Center, Suite 3450, Beverly, Massachusetts 01915. Defendant conducts business throughout this District, the Commonwealth of Massachusetts, and the United States. It is unclear at this time who the members are of CSG. Matthew Guthrie and Daniel Kwiatek are both managers

and both reside in Massachusetts.

**ANSWER:** Defendants admit that Commonwealth is a limited liability company organized and existing under the laws of the State of Massachusetts with its headquarters located at 500 Cummings Center, Suite 3450, Beverly, Massachusetts 01915. Defendants admit that Commonwealth conducts business throughout this District, the Commonwealth of Massachusetts. The Defendants deny that Commonwealth conducts business throughout the entire United States. The Defendants admit that Matthew Guthrie and Daniel Kwiatek are managers of Commonwealth and that both reside in Massachusetts.

3. Defendant DMB Financial, LLC is a limited liability company organized and existing under the laws of the State of Massachusetts. Like its co-Defendant CSG, DMB's headquarters is located at 500 Cummings Center, Suite 3450, Beverly, Massachusetts 01915. Defendant conducts business throughout this District, the Commonwealth of Massachusetts, and the United States. Matthew Guthrie and Daniel Kwiatek are both managers and both reside in Massachusetts.

**ANSWER:** Defendants admit that DMB is a limited liability company organized under the laws of the State of Massachusetts. Defendants further admit that DMB's headquarters is located at 500 Cummings Center, Suite 3450, Beverly, Massachusetts 01915. Defendants admit that DMB conducts business throughout this District, the Commonwealth of Massachusetts. The Defendants deny that DMB conducts business throughout the entire United States. The Defendants admit that Matthew Guthrie and Daniel Kwiatek are managers of DMB and that both reside in Massachusetts.

## **JURISDICTION AND VENUE**

4. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which is a federal statute. The Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* because the class consists of over 100 people, at least one member of the class is from a State other than Massachusetts, and the amounts in controversy are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply. On information and belief, the members of both Defendants reside in the Commonwealth of Massachusetts.

**ANSWER:**   The Defendants admit that the Court has federal question subject matter under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227.  The Defendants deny that a class exists.  The Defendants deny that the amounts in controversy are over $5,000,000.00.  The Defendants lack sufficient knowledge to admit or deny as to whether any of the exceptions to CAFA jurisdiction apply in this instance.  The Defendants admit that members of both Defendants reside in the Commonwealth of Massachusetts.

5. The Court has personal jurisdiction over Defendants because they have ongoing and continuous contacts with this District, are headquartered and reside in this District, solicit significant consumer business in this District, have entered into contracts in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. On information and belief, the members of both Defendants reside in this District.

**ANSWER:**   The Defendants deny that they solicit significant consumer business in this District. The Defendants further deny they made the phone calls as alleged in the Plaintiff's Complaint or participated in any unlawful conduct.   The Defendants admit the remaining allegations.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants both reside in this District.

**ANSWER:** Defendants admit the allegations set forth in paragraph 6.

## COMMON FACTUAL ALLEGATIONS

7. Defendant CSG is a debt settlement business. CSG claims that since it assists consumers by negotiating lower payments on their outstanding debts.

**ANSWER:** Defendants deny the allegations set forth in paragraph 7.

8. Defendant DMB is a financial services company that also claims it assists consumers in restructuring and reducing their existing debts.

**ANSWER:**  Defendants deny the allegations set forth in paragraph 8.

9. Defendants share the same managing members—Matthew Guthrie and Daniel Kwiatek—and are headquartered at the same address: 500 Cummings Center, Suite 3450, Beverly, Massachusetts 01915.

**ANSWER:**  Defendants admit the allegations set forth in paragraph 9.

10. On information and belief, Defendants work together to conduct a wide-scale telemarketing scheme that features the placement of calls to consumers using the fictitious name Commonwealth Law Group.

**ANSWER:** Defendants deny the allegations set forth in paragraph 10.

11. Unfortunately for consumers, Defendants cast their marketing net too wide. That is, in an attempt to promote their businesses and to generate leads for their debt management services, Defendants conducted (and continue to conduct) a national telemarketing campaign that features the repeated making of unsolicited calls to consumers' telephones, including cellular, while utilizing an artificial or prerecorded voice without consent—all in violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

**ANSWER:** Defendants deny the allegations set forth in paragraph 11.

12.     Hence, in Defendants' overzealous attempts to market their services, they placed (and continue to place) prerecorded phone calls to consumers that never provided consent to be called and to consumers with whom they have no prior relationship.

**ANSWER:**  Defendants deny the allegations set forth in paragraph 12.

13.     The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case.

**ANSWER:** Defendants lack sufficient knowledge to admit or deny as to why Congress enacted the TCPA.  Defendants deny that they made the phone calls as alleged in the Plaintiff's Complaint.

14.     In response to Defendants' unlawful conduct, Plaintiff files the instant lawsuit and seeks injunctive and declaratory relief requiring Defendants to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Class under the TCPA, together with pre- and post-judgment interest, costs and reasonable attorneys' fees.

**ANSWER:**  The Defendants deny that they participated in any unlawful conduct.  Defendants deny that they made the phone calls as alleged in the Plaintiff's Complaint.  The Defendants admit that the Plaintiff filed the instant lawsuit seeking the remedies referenced in paragraph 14.

15.     By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of the Class actual harm and cognizable legal injury. This includes aggravation, nuisance, and invasions of privacy that result from the placement and receipt of such unwanted calls, a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls, and an interruption and loss of the use and enjoyment of their telephones,

including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life, among other harms.

**ANSWER:**  Defendants deny the allegations set forth in paragraph 15.

16. Defendants knowingly made (and continue to make) telemarketing calls without the prior express consent of the call recipients.

**ANSWER:**  Defendants deny the allegations set forth in paragraph 16.

17. As such, Defendants not only invaded the personal privacy of Plaintiff and members of the putative Class, they also intentionally and repeatedly violated the TCPA.

 **ANSWER:**  Defendants deny the allegations set forth in paragraph 17.

## FACTS SPECIFIC TO PLAINTIFF KEITH HOBBS

18. Plaintiff Hobbs is the primary and customary user of the telephone number ending in 7558.

**ANSWER:**  The Defendants lack sufficient knowledge to either admit or deny the allegations set forth in paragraph 18.

19. Beginning in or around April 2018, Plaintiff Hobbs received a series of telemarketing calls, including prerecorded calls, from Defendants soliciting him to purchase their debt reduction services.

**ANSWER:** Defendants deny the allegations set forth in paragraph 19.

20. On information and belief, Defendants utilize Caller ID spoofing technology to mask the identity of their originating telephone numbers.

**ANSWER:** Defendants deny the allegations set forth in paragraph 20.

21. Defendants acted jointly when making the calls. The calls were made for the mutual benefit in accordance with their unlawful telemarketing scheme (that featured repeated autodialed

and pre-recorded message calls to consumers who never provided prior express consent to receive them).

**ANSWER:** Defendants deny the allegations set forth in paragraph 21.

22. During one of the calls, Plaintiff Hobbs answered and heard the following prerecorded statement: "Hello, this is Heather at Account Services, and we're calling in reference to your current credit card account. There's no problems currently with your accounts. It is urgent, however, that you contact us concerning your eligibility for lowering your interest rates to as little as 6.9%. Your eligibility expires shortly so please consider this your final notice. Please press 1 now on your phone to speak with a live operator and lower your interest rates . . ."

**ANSWER:** The Defendants lack sufficient knowledge to either admit or deny the allegations set forth in paragraph 22.

23. In response to the message, Plaintiff pressed 1 to speak with a representative. He then heard the following prerecorded statement, "Thank you for calling Debt Services. If you do not have more than ten thousand dollars in credit card debt, then press 7 now to be placed on our do not call list. Otherwise, if you do have more than ten thousand dollars in credit card debt and would like to speak with a debt specialist, press 4 now. Thank you."

**ANSWER:** The Defendants lack sufficient knowledge to either admit or deny the allegations set forth in paragraph 23.

24. Following the second message, Plaintiff pressed 4 and spoke with an individual who identified herself as "Sarah."

**ANSWER:** The Defendants lack sufficient knowledge to either admit or deny the allegations set forth in paragraph 24.

25. Although he had never provided prior express consent to be called, Plaintiff

provided Defendants' agent/employee with responses to her inquires regarding his current debts to see if he was eligible for a reduction on his current credit card interest rates.

**ANSWER:**  Defendants deny the allegations set forth in paragraph 25.

26. During the call, Plaintiff asked if he could receive information regarding the debt reduction services via email.  Defendants' agent/employee informed Plaintiff that they "don't send you any email information."

**ANSWER:**  Defendants deny the allegations set forth in paragraph 26.

27. Thereafter, Plaintiff was quickly transferred to another agent/employee of the Defendants who identified himself as David Mahajan.

**ANSWER:**  Defendants deny the allegations set forth in paragraph 27.

28. Following a conversation about the details of the debt reduction services, Plaintiff again requested that Mr. Mahajan send him information via email. Mr. Mahajan also stated that they don't send information via email. Plaintiff then ended the call.

**ANSWER:** The Defendants lack sufficient knowledge to either admit or deny the allegations set forth in paragraph 28.

29. Subsequently, Mr. Mahajan sent Plaintiff a text message. The message reiterated the plan that Defendants had offered Plaintiff over the telephone and then provided Plaintiff with a direct link to the website, https://www.cwservicing.com/settlements/.

**ANSWER:** The Defendants lack sufficient knowledge to either admit or deny the allegations set forth in paragraph 29.

30. On information and belief, Defendants own and operate the website, https://www.cwservicing.com/settlements/.

**ANSWER:**  Defendants admit the allegations set forth in paragraph 30.

31. Plaintiff Hobbs does not have a current relationship with Defendants and has never provided any form of prior express consent to Defendants.

**ANSWER:** Defendants admit the allegations set forth in paragraph 31. Defendants deny that they made the telephone calls as alleged in the Plaintiff's Complaint.

32. By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the placement and receipt of such unwanted calls, a loss of value realized for the monies consumers paid to his wireless carriers for the receipt of such calls, and the interruption and loss of the use and enjoyment of his telephones, including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life, among other harms.

**ANSWER:** Defendants deny the allegations set forth in paragraph 32.

33. Defendants are and were aware that the above-described telephone calls are and were being made to consumers like Plaintiff who had not consented to receive them.

**ANSWER:** Defendants deny the allegations set forth in paragraph 33.

**CLASS ALLEGATIONS**

34. In accordance with Fed. R. Civ. P. 23 Plaintiff Hobbs brings this action on behalf of himself and a nationwide Class defined as follows:

> All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the class members; (2) Defendants, or a third person acting on behalf of Defendants, called; (3) for the purpose of selling Defendants' products and/or services, (4) using the same pre-recorded voice that was used to call the Plaintiff; and (5) for whom Defendants claim they obtained prior express consent in the same manner as Defendants claim they supposedly obtained prior express consent to call the Plaintiff.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this

action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the need to amend the class definition following discovery into the scope of the class, the manner by which the Plaintiff supposedly consented to receipt of the calls, the technology used to place the calls, and the identity of any other persons who should be included as party defendants.

**ANSWER:** Defendants deny that a class exits. The allegations set forth in paragraph 34 speak for themselves.

35. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but individual joinder is impracticable. On information and belief, Defendants made telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through reference to objective criteria, including Defendants' business records, consumer phone records, and other objective evidence to be gained in discovery.

**ANSWER:** Defendants deny that a class exits. Defendants deny that they made the telephone calls as alleged in the Plaintiff's Complaint.

36. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

  (a)  Whether Defendants' conduct violated the TCPA;

  (b)  Whether Defendants systematically made telephone calls to individuals who did not previously provide Defendants and/or their agents with their prior express consent to receive such phone calls;

  (c)  Whether Defendants made the calls with the use of an artificial and/or prerecorded voice; and

  (d)  Whether Defendants' acted willfully such that treble damages are warranted.

**ANSWER:** Defendants deny that a class exits. Defendants deny that a class action is appropriate in this instance. Defendants deny that they made the telephone calls as alleged in the Plaintiff's Complaint.

  37.  **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff is a member of the Class and, together with the other Class members, suffered essentially identical harm and damages as a result of Defendants' uniform wrongful conduct, namely their repeated making of unlawful telemarketing calls.

**ANSWER:** Defendants deny that a class exits. Defendants deny that a class action is appropriate in this instance. Defendants deny that they made the telephone calls as alleged in the Plaintiff's Complaint. Defendants deny that they participated in wrongful conduct. Defendants deny that the Plaintiff or any alleged class member suffered harm or damages as alleged in the Complaint.

  38.  **Fair and Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions, including class actions under the TCPA for pre-recorded voice calls and similar cases. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no

defenses unique to Plaintiff.

**ANSWER:** Defendants deny that a class exits. Defendants deny that a class action is appropriate in this instance. Defendants deny that they made the telephone calls as alleged in the Plaintiff's Complaint. Defendants deny that the Plaintiff or any alleged class member suffered harm or damages as alleged in the Complaint. Defendants deny that they participated in wrongful conduct.

39. **Conduct Similar Towards All Class Members under Rule 23(b)(2)**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a respective whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a respective whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a respective whole, not on facts or law applicable only to Plaintiff.

**ANSWER:** Defendants deny that a class exits. Defendants deny that a class action is appropriate in this instance. Defendants deny that they made the telephone calls as alleged in the Plaintiff's Complaint. Defendants deny that the Plaintiff or any alleged class member suffered harm or damages as alleged in the Complaint. Defendants deny that they participated in wrongful conduct.

40. **Superiority & Manageability under Rule 23(b)(3)**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual

members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court for each of the Class. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

**ANSWER**: Defendants deny that a class exits.  Defendants deny that a class action is appropriate in this instance.   Defendants deny that they made the telephone calls as alleged in the Plaintiff's Complaint. Defendants deny that the Plaintiff or any alleged class member suffered harm or damages as alleged in the Complaint.  Defendants deny that they participated in wrongful conduct.

**CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227(b),** *et seq*.
**(On behalf of Plaintiff and the Class)**

41. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:**  Defendants incorporate their forgoing answers as if fully set forth herein.

42. Defendants made unsolicited and unwanted pre-recorded telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Class—without their prior express written consent—in an effort to sell their products and services.

**ANSWER:**  Defendants deny the allegations set forth in paragraph 42.

43. Defendants acted jointly in making the calls, and the calls were made with their mutual knowledge and for their mutual benefit.

**ANSWER:**  Defendants Deny the allegations set forth in paragraph 43.

44. Under the TCPA, it is unlawful:

**to initiate any telephone call to any residential telephone line using an artificial**

13

>**or prerecorded voice** to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B);

*See* 47 U.S.C. § 227(b)(1)(B). (emphasis added).

**ANSWER:**   The section of the Act referenced in paragraph 44 speaks for itself.

45.   By making unsolicited telephone calls to Plaintiff and members of the Class's telephones using an artificial or pre-recorded voice without first obtaining prior express consent, Defendants violated the TCPA.

**ANSWER:**   Defendants deny that they made the telephone calls as alleged in the Plaintiff's Complaint.

46.   As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones, lost data, and other damages, and, under Section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

**ANSWER:** Defendants deny the allegations set forth in paragraph 46.

47.   Should the Court determine that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

**ANSWER:** Defendants deny that they made the telephone calls as alleged in the Plaintiff's Complaint.  The section of the Act referenced in paragraph 47 speaks for itself.

## **AFFIRMATIVE DEFENSES**

Defendants do not concede or waive the issue of which party bears the burden of proof as to any of the following:

### **First Affirmative Defense**
### **(Failure to State a Claim)**

The Complaint fails to state a claim upon which relief can be granted.

### **Second Affirmative Defense**
### **(No Use of Automatic Telephone Dialing System)**

The telephone system utilized by Defendants does not qualify as an automatic telephone dialing system as defined by the Telephone Consumer Protection Act ("TCPA").

### **Third Affirmative Defense**
### **(No Use of Artificial or Pre-Recorded Voice)**

The telephone system utilized by Defendants does not have the capabilities to make phone calls using an artificial or pre-recorded voice.

### **Fourth Affirmative Defense**
### **(Lack of Vicarious Liability)**

Defendants are not liable for the calls as alleged by the Plaintiff as any such calls, if any such calls were made, would have been made by third parties for whose actions Defendants cannot be held vicariously liable.

### **Fifth Affirmative Defense**
### **(Waiver)**

Plaintiff's (and alleged class members) claims are barred by the doctrine of waiver.

### **Sixth Affirmative Defense**
### **(Estopple)**

Plaintiff and alleged class members have waived and are otherwise estopped from pursuing their claims.

### **Seventh Affirmative Defense**
### **(Unclean Hands)**

Plaintiff's (and alleged class members), claims are barred by the doctrine of unclean hands in that Plaintiff's own actions are the cause of his Complaint.

### Eighth Affirmative Defense
### (Frolic & Detour)

To the extent that any violation of the TCPA was committed by agents or employees of Defendants in direct contravention to established company policies, such conduct by such agents or employees was unauthorized, outside the ambit of their direct duties, and not in furtherance, but in direct contravention, of Defendants' policies. Defendants are not vicariously liable for such acts.

### Ninth Affirmative Defense
### (Indemnification)

To the extent Defendants are liable to the Plaintiff (and alleged class members), Defendants are entitled to indemnification from one or more third parties.

### Tenth Affirmative Defense
### (Lack of Due Process)

The TCPA violates the First Amendment, Firth Amendment, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment to the Constitution of the United States of America and is unconstitutional under state law.

### Eleventh Affirmative Defense
### (Statute of Limitations)

The Plaintiff's (and alleged class members) claims are barred by the statute of limitations.

### Twelfth Affirmative Defense
### (Failure to Mitigate)

Plaintiff's claims (and alleged class members) are limited to the extent that he failed to mitigate his damages.

### Thirteenth Affirmative Defense
### (Duplicate Recovery)

Plaintiff's (and alleged class members) recovery is barred in whole or in part to the extent that he seeks damages that would constitute a duplicative recovery.

### Fourteenth Affirmative Defense
### (Ratification)

Plaintiff's (and alleged class members) claims are barred, in whole or in part, by the doctrine of ratification because he acquiesced to any conduct allegedly engaged in by Defendants.

### Fifteenth Affirmative Defense
### (Lack of Standing)

Plaintiff (and alleged class members) lacks standing to bring the claims at issue as he has not suffered actual harm.

### Sixteenth Affirmative Defense
### (Reservation of Rights)

Defendants do not yet have knowledge of all facts and evidence surrounding this matter and, as a result, reserves its rights to amend its Answer to raise additional affirmative defenses as they are discovered. Defendants reserve all rights to assert any and all other and further defenses.

### Seventeenth Affirmative Defense
### (Right to Amend)

Defendants reserve the right to amend their Answer, to assert additional affirmative defenses and to supplement, alter or change its Affirmative Defenses upon revelation of more definitive facts by the Plaintiff and upon the undertaking of discovery and investigation in this matter.

### Eighteenth Affirmative Defense
### (Good Faith)

The claims in the Plaintiff's Complaint are barred because, at all times complained of, Defendants acted without malice and in good faith, and all actions taken by Defendants with regard to the Plaintiff were taken for lawful reasons and in good faith.

### Nineteenth Affirmative Defense
### (Consent)

Based on Plaintiff's actions, allegations, and/or conduct, Plaintiff (and alleged class members) consented to receive the telephones calls as alleged in his Complaint.

RESPECTFULLY SUBMITTED

By: /s/ Daniel G. Ruggiero
Daniel G. Ruggiero, Esq.
275 Grove Street
Suite 2-400
Newton, MA 02466
339-237-0343
druggieroesq@gmail.com

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on May 9, 2019 a true and correct copy of the foregoing was served upon all counsel and parties of record listed below by e-mail and if requested, via U.S. Mail as well.

                                 **/s/ Daniel G. Ruggiero**

                                 _____
                                 **Daniel G. Ruggiero, Esq.**

## **SERVICE LIST**

Julie M. Tolek, Esq.
julie@thinkpinklaw.com
Think Pink Law
160 Speen Street, #202
Framingham, MA  01701
Tel: (617) 752-1739
Fax: (617) 752-1739

Steven L. Woodrow*
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Phone: (720) 213-0675
Email: swoodrow@woodrowpeluso.com